IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ARTHUR HILL,                        )
                                    )
            Plaintiff,              )
                                    )
    v.                              )        1:11CV107
                                    )
EQUIFAX INFORMATION SERVICES,       )
LLC,                                )
                                    )
            Defendant.              )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

This matter is before the court on the Motion for Partial
Judgment on the Pleadings (Doc. 34) and Motion for Summary
Judgment (Doc. 55) filed by Defendant Equifax Information
Services, LLC ("Defendant" or "Equifax").  Plaintiff Arthur Hill
("Plaintiff" or "Hill") filed the instant lawsuit pro se,
alleging violations of various provisions of the Fair Credit
Reporting Act and related North Carolina state statutes.  In
response to Defendant's Motion for Partial Judgment on the
Pleadings and Motion for Summary Judgment, Plaintiff filed
responses (Doc. 38 and Doc. 64, respectively) and Defendant has
replied (Doc. 43 and Doc. 68, respectively).  The motions are
now ripe for adjudication.  After reviewing the motions,

accompanying briefs, and relevant filings in the case, this court finds that both motions should be granted for the reasons that follow.

## I.   PROCEDURAL HISTORY

Arthur Hill proceeds pro se in this lawsuit filed under the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA" or "the Act") and related North Carolina state statutes.  In addition to the original complaint[1] (Complaint (Doc. 3)), Plaintiff has filed an Amended Complaint (Def.'s Am. Notice of Removal, Ex. B., Am. Complaint ("Am. Compl.") (Doc. 12-2)) and a document entitled "Supplemental Complaint" (Doc. 44).  From the record, it appears Plaintiff took no discovery or depositions to support his allegations.

On June 1, 2012, Equifax filed a Motion for Partial Judgment on the Pleadings (Doc. 35) as to 13 of the 28 counts set forth in Plaintiff's Complaint and Amended Complaint.  On November 19, 2012, Defendant filed a Motion for Summary Judgment (Doc. 55) on those 13 counts as well as the remaining 15 counts

---

[1] Plaintiff first filed this lawsuit in state court on December 8, 2010. (Doc. 3.)  Defendant then removed the case to federal court (Doc. 1.) where it remains after denial of Plaintiff's motion for remand (Doc. 8), amended motion for remand (Doc. 14), and motion for reconsideration or in the alternative certification for interlocutory appeal (Doc. 25). (Docs. 17, 24, 30.)

in the Amended Complaint and all the counts asserted in the Supplemental Complaint.

Plaintiff's claims arise from what Plaintiff contends are numerous violations of the FCRA by Defendant in response to alleged errors and inaccuracies in his credit report. Plaintiff alleges a host of violations of the FCRA, including violations of § 1681b (requiring reasonable procedures regarding credit reporting), § 1681e(b) (requiring "reasonable procedures to assure maximum possible accuracy"), § 1681i(a) (requiring a reasonable reinvestigation of disputed information), § 1681c-1 (requiring the placement of fraud alerts upon request by consumers), § 1681g (requiring disclosure of a consumer's file to that consumer), and § 1681c (requiring exclusion and inclusion of certain information in credit reports). Defendant contends that its procedures are reasonable as to each requirement of the FCRA and that, in any event, Plaintiff lacks sufficient evidence of actual damages or an evidentiary basis for punitive damages to create a genuine issue of material fact.

## II. FACTUAL BACKGROUND

"Fed. R. Civ. P. 56 prescribes specific procedures to be followed in submitting evidence for or against a summary judgment motion." Orsi v. Kirkwood, 999 F.2d 86, 91 (4th Cir. 1993). As noted by Defendant in its Reply (Def.'s Reply in

- 3 -

Supp. of Mot. for Summ. J. (Doc. 68)), <u>Orsi</u> states that "unsworn, unauthenticated documents cannot be considered on a motion for summary judgment." (<u>Id.</u> at 3.)[2]

Here, Plaintiff, in support of his claims and in response to summary judgment, has submitted very lengthy verified pleadings including a complaint, amended complaint, supplemental complaint, and affidavits, including numerous attachments. Additionally, Plaintiff has submitted his personal affidavit affirming that all the documents he has "provided in support of [his] opposition to Defendant's Motion for Summary Judgment are true and accurate copies." (Pl.'s Resp. Br. in Opp'n of Def.'s Mot. for Summ. J. ("Pl.'s Resp. Br."), Attach. 1, Affidavit of Arthur Hill (Doc. 64-2).) While each of Plaintiff's submissions is not directly attached to a separate affidavit, his sworn statement was filed alongside his response brief (Doc. 64), as were all his additional items of evidence.

Plaintiff is proceeding pro se, and, as a result, a determination of what facts may be considered at summary judgment is complicated by this court's duty to construe pro se pleadings liberally. <u>See, e.g.</u>, <u>Butler v. Cooper</u>, 554 F.2d 645,

_____

[2] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

- 4 -

647 (4th Cir. 1977).[3]  Fed. R. Civ. P. 56(c)(1)(A) permits a
party to cite "particular parts of materials in the record."
However, a "party's reliance on that material may be defeated if
"the material cited to support or dispute a fact cannot be
presented in a form that would be admissible in evidence.  Fed.
R. Civ. P. 56(c)(2)."  <u>Whittaker v. Morgan State Univ.</u>, No.
12-2293, 2013 WL 2350425 (4th Cir. 2013).  The comments to the
most recent Federal Rules amendment make clear that "[t]he
burden is on the proponent to show that the material is
admissible as presented or to <u>explain the admissible form that
is anticipated</u>."  Fed. R. Civ. P. 56, comment to subdivision
(c)(2) (emphasis added).  In this case, Plaintiff has cited to,
and relied upon, a number of facts as set forth either in his
verified pleadings or in his affidavit.  In light of the duty to
construe pro se pleadings liberally, <u>see, e.g.,</u> <u>Butler</u>, 554 F.2d
at 647, this court has, where possible, assumed Plaintiff could
subpoena a witness or present admissible evidence of a
particular fact and will award to Plaintiff the benefit of the
doubt as to his ability to present admissible evidence at trial.

---

[3] <u>See also</u> <u>Boag v. MacDougall</u>, 454 U.S. 364, 365 (1982)
(noting that federal courts should construe a pro se
petitioner's pleading liberally, no matter how inartful).
Although many cases address liberal construction in relation to
the sufficiency at the pleadings stage, the <u>Butler</u> case suggests
that liberal construction applies at summary judgment as well.

- 5 -

However, where Plaintiff has presented no evidence, or even an inference, of the ability to present evidence in admissible form, those facts cannot be considered in opposition to Defendant's motion for summary judgment. Pursuant to the foregoing principles, this court will summarize the undisputed facts in the light most favorable to the Plaintiff.

There is no dispute that Plaintiff is a consumer (15 U.S.C. § 1681a(c) and Defendant is a consumer reporting agency within the meaning of the FCRA. (Def.'s Br. in Supp. of Mot. for Summ. J. ("Def.'s Br."), Ex. B (Doc. 56-2) ¶ 4.) Furthermore, it is undisputed that Plaintiff was never denied credit, did not suffer adverse financing activity, nor was his credit score adversely affected as a result of the matters about which Plaintiff now complains.

The first area of dispute with Equifax relates to two former addresses (Port Barre, Louisiana, and Richmond, Ohio) that Plaintiff alleges were erroneously included in his credit report. (Am. Compl. (Doc. 12-2) ¶¶ 20, 30.) There is no evidence Plaintiff has ever used or been associated in any fashion with the Port Barre address of P.O. Box 1585, Port Barre, Louisiana. The dispute as to the Port Barre address began in 2008 when Plaintiff discovered the address on his report. On June 16, 2008, Equifax received an online dispute

- 6 -

from Plaintiff of the Port Barre address and intended to delete the address but failed to do so. (Def.'s Br., Ex. B, Declaration of Mackenzie Cole ("Cole Decl.") (Doc. 56-2) ¶ 45.) In December 2009, Plaintiff again contacted Equifax to correct these addresses as well as an account he disputed, the "Escallate/Medclear" account. (Am. Compl. (Doc. 12-2) ¶¶ 34, 36; Def.'s Br., Cole Decl. (Doc. 56-2) ¶ 46.) Equifax contends that as a result, it deleted the Port Barre address (Def.'s Br., Cole Decl. (Doc. 56-2) ¶ 46), but on January 6, 2010, Plaintiff again disputed the Port Barre (P.O. Box 1585) address; for some as yet unexplained reason, this time Equifax moved the address to "the former address section of Plaintiff's credit file." (Id. ¶ 50.) On January 12, 2010, Plaintiff again disputed the Port Barre address and Equifax apparently took no action. (Id. ¶ 51.) On January 14, 2010, Plaintiff notified Equifax that he would not be sending in documents to remove the Port Barre address because it had been reported by Honda.[4] (Id. ¶ 52.) On January 27, 2010, Plaintiff again disputed the Port Barre

---

[4] Whether the address had or had not been reported by Honda is inadmissible hearsay (Fed. R. Evid. 801, 802.) Nevertheless, it is considered by this court not for the truth of the matter asserted but rather for the purpose of explaining why Equifax took no action on January 14, 2010.

address and, in response, Defendant permanently suppressed the address.[5] (Id. ¶ 53.)

The second area of Plaintiff's dissatisfaction with Defendant relates to the reporting and removal of a Medclear/NCO Collection account. The undisputed facts do not reflect that the Medclear/NCO account was improperly reported by Defendant on Plaintiff's credit report. Plaintiff's verified pleadings reflect that the account was based upon an NCO report that contained false information, including "a wrong address and misrepresented the fact that the Plaintiff was insured on 2 insurance policies that covered his son and his ex-wife, and also associated the Plaintiff with his ex-wife's home address. . . ." (Am. Compl. (Doc. 12-2) ¶ 17.) Although Plaintiff alleges a misrepresentation, that appears to have been attributable to NCO's report and not to any action by Defendant. Regardless, Plaintiff has forecast no evidence from which this

_____

[5] Defendant argues for the first time in its second supplemental brief that the address information is "credit header" information and not subject to the FCRA. (Def.'s Second Supplemental Br. (Doc. 102) at 6.) While this argument may be correct, this is a new argument and was not raised in a timely fashion. Accordingly, this argument will not be considered by this court.

court could find that Defendant acted improperly in reporting the account.[6]

Nevertheless, in May and June 2008, Plaintiff disputed the Medclear account as not his. (Am. Compl. (Doc. 12-2) ¶ 17.) Defendant conducted a reinvestigation; Medclear advised Defendant to delete the account. (Def.'s Br., Cole Decl. (Doc. 56-2) ¶¶ 41-42.) Defendant deleted the account and sent Plaintiff the reinvestigation results. (Id.; Am. Compl. (Doc. 12-2) ¶ 17; Pl.'s Resp. Br., Ex. A, Declaration of Arthur Hill ("Hill Decl.") (Doc. 64-1) ¶ 23.)

Plaintiff's own actions in relation to the Medclear/NCO account were in part responsible for the third matter about which Plaintiff complains. Specifically, the third matter of dispute is that Plaintiff requested a One-Call Fraud Alert ("90-Day Fraud Alert"). Instead of a 90-Day Fraud Alert, Defendant placed an Extended Fraud Alert on Plaintiff's account. (Am. Compl. (Doc. 12-2) ¶ 18.)

---

[6] The fact the account was subsequently removed by Defendant is, standing alone, not evidence that Defendant acted improperly in reporting the account initially. Plaintiff has offered no evidence that Defendant's reporting procedures were unreasonable, nor has Plaintiff disputed Defendant's description of those procedures. (See Def.'s Br., Cole Decl. (Doc. 56-2) ¶¶ 6-9.) Furthermore, Plaintiff acknowledged at oral argument that the account arose from medical expenses for his minor son. The account therefore did bear some relationship to Plaintiff.

In June of 2008, while addressing the Medclear/NCO account, Plaintiff "received information from NCO which indicated NCO was providing false information about the Plaintiff in support of the collection." (Id. ¶ 17.) On May 30, 2008, Plaintiff again disputed the Medclear account with the Defendant. (Def.'s Br., Cole Decl. (Doc. 56-2) ¶ 43.) At that time, "Plaintiff stated that the account was the result of fraudulent account take over."[7] (Id.) Plaintiff requested that a 90-Day Fraud Alert "be placed on his credit file through Equifax." (Am. Compl. (Doc. 12-2) ¶ 18.) Defendant conducted a reinvestigation, and "[o]n June 20, 2008, Medclear responded and indicated the account was the result of fraudulent activity."[8] (Def.'s Br., Cole Decl. (Doc. 56-2) ¶ 44.) Defendant then added an extended fraud alert to Plaintiff's credit file. (Id.)

---

[7] Plaintiff disputes this statement. (Pl.'s Resp. Br., Hill Decl. (Doc. 64-1) ¶ 27.) Plaintiff's dispute is not material, as Plaintiff clearly makes allegations of fraudulent conduct in relation to the account. (Id. ¶¶ 26-28.) Regardless of whether there was a "fraudulent account takeover" or simply fraudulent activity, Plaintiff has presented no evidence that an extended fraud alert was either a violation of the FCRA or an unreasonable procedure.

[8] Plaintiff contends NCO/Medclear's statements are inadmissible hearsay. (Pl.'s Resp. Br., Hill Decl. (Doc. 64-1) ¶ 28.) Those statements will be considered by this court not for the truth of the matter asserted but instead to explain why Defendant acted in the manner it did. See U.S. v. Diaz, 670 F.3d 332, 346 (1st Cir. 2012) ("The government offered Perez's out-of-court statement to explain why Veguilla had arrested Rodriguez-Romero, not as proof of the drug sale . . .").

Defendant's fraud alerts may either be temporary (90 days) or extended (7 years). (Def.'s Br., Cole Decl. (Doc. 56-2) ¶ 25.) "A fraud alert does not impact a consumer's credit score." (Id. ¶ 30.) In light of the fact Plaintiff advised Defendant of fraudulent activity and Medclear also advised Defendant of fraudulent activity, Plaintiff has presented no evidence, nor forecast the possibility of evidence, that Defendant's procedure in placing an extended fraud alert was unreasonable or improper under the FCRA.

The fourth matter alleged by Plaintiff is that Defendant intentionally listed a fraudulent address on a Honda Financial Services account. (Am. Compl. (Doc. 12-2) ¶ 34.) In the Amended Complaint, Plaintiff alleges "[u]pon information and belief, an agent or employee of Equifax contacted Honda on or immediately prior to January 2008 via the U.S. Mail Service and had his address changed to a P.O. Box in the state of Louisiana, resulting in that same address being reported to other credit bureaus by Honda. Only Equifax changed the Plaintiff's current address to the fraudulent address . . . ." (Id. ¶ 35.) Plaintiff's allegations as to this activity are speculative at best and not supported by any fact in the record that would be admissible, nor has Plaintiff presented any evidence to suggest these facts could be presented in admissible form at trial.

- 11 -

Accordingly, the allegations as to any contact by agents or employees of Defendant with Honda to change Plaintiff's address will not be considered by this court.

The fifth matter asserted by Plaintiff relates to various failures by Equifax in relation to a disputed collection by Escallate LLC. Plaintiff alleges that in December of 2009 he disputed with Defendant a collection by Escallate LLC, a collection company. (Am. Compl. (Doc. 12-2) ¶ 34.) Plaintiff states that this collection was the same debt which NCO attempted to collect in 2008. (Id.) In response, Defendant "investigated the Escallate account by contacting Escallate by ACDV [Automated Consumer Dispute Verification] and notifying it of Plaintiff's dispute. Escallate verified the accuracy of the account. Equifax reported the results of its reinvestigation to Plaintiff." (Def.'s Br., Cole Decl. (Doc. 56-2) ¶ 46.) Apparently, Plaintiff then disputed the account with Escallate directly. (Am. Compl. (Doc. 12-2) ¶ 37.) Subsequently, Plaintiff again disputed the Escallate account with Defendant as not his. In response, Defendant contacted Escallate and

- 12 -

Escallate advised Defendant to delete the account.[9] (Def.'s Br., Cole Decl. (Doc. 56-2) ¶ 48.) Defendant deleted the account and reported the results to Plaintiff. (Id.) Although Plaintiff alleges that Defendant "did not provide a corrected credit file to confirm the collection account was deleted" (Am. Compl. (Doc. 12-2) ¶ 37), Plaintiff does not dispute that the account was deleted and that he received the results of the reinvestigation. (Id.)

Plaintiff's sixth complaint as to Defendant is the imposition of a $3 fee to install a security freeze following a security breach at Ridenow Powersports. Plaintiff alleges that he tried to place a security freeze free of charge online but was not able to do so. (Id. ¶ 51.) After he was not able to place the security freeze online, Plaintiff contacted Defendant and was provided conflicting information. (Id. ¶ 52.) Ultimately, Plaintiff was compelled to mail in his request and pay a $3 fee. (Id. ¶ 53.) At the time Plaintiff attempted to place the security freeze, he had "an extended fraud alert on his credit file." (Def.'s Br., Cole Decl. (Doc. 56-2) ¶ 71.)

---

[9] Here again, the fact that the account was deleted, standing alone, is not evidence that Defendant improperly reported the account in the first instance. Plaintiff has offered no evidence that Defendant's reporting procedures were unreasonable, nor has Plaintiff disputed Defendant's description of those procedures. (See Def.'s Br., Cole Decl. (Doc. 56-2) ¶¶ 6-9.)

According to Defendant and not disputed by Plaintiff, "[w]hen a consumer has an extended fraud alert on the credit file, any request for a security freeze must be made in writing or by phone as an added security measure for consumers." (Id.) Equifax offered to refund the $3 fee if Plaintiff would provide a bank statement documenting the expense. (Id. at 73.) Plaintiff never applied for the refund. (Id. ¶ 74.)

Plaintiff's seventh complaint relates to an HSBC revolving account in Plaintiff's name. Plaintiff alleges that Defendant failed "to provide HSBC a telephone number or other reasonable contact method of the Plaintiff" (Am. Compl. (Doc. 12-2) ¶ 222) and "fail[ed] to include a notification to HSBC which indicated the Plaintiff does not authorize the establishment of any new credit plan or extension of credit in the name of the Plaintiff on April 5, 2010 when an Extended Fraud Alert was in place on the Plaintiff's credit file." (Id. ¶ 218.) On May 24, 2012, Defendant received a referral from Experian for the disputed HSBC account. (Def.'s Br., Cole Decl. (Doc. 56-2) ¶ 66.) Equifax conducted a reinvestigation and HSBC verified the accuracy of the account, all of which Defendant reported to the Plaintiff. (Id.) On December 12, 2010, Defendant received a dispute directly from the Plaintiff as to the HSBC account and,

- 14 -

in response, Defendant confirmed the account with HSBC and reported the results to Plaintiff.  (Id. ¶ 61.)

With respect to the HSBC account, this court finds the evidence wholly insufficient to support Plaintiff's allegations. It may be true that Plaintiff may have some issue with the HSBC credit plan that appeared on his credit report.  However, Plaintiff has presented no admissible evidence, nor forecast any admissible evidence, of the circumstances of the creation of the HSBC account, what may have occurred in relation to the creation of the account, or any failure by Defendant arising from the security freeze.  Accordingly, this court declines to find that Plaintiff has presented any facts to support his allegations as to improprieties as to the HSBC account, or that it is improperly reported on his credit report.

Plaintiff's eighth issue arises from what Plaintiff contends were two websites of Defendant, one of which included fraudulent information and also fraudulently induced Plaintiff into purchasing a service which imposed a monthly fee for credit monitoring ("Score Watch subscription") as opposed to a one-time fee for a report.  (Am. Compl. (Doc. 12-2) ¶¶ 64-65; Pl.'s Resp. Br., Hill Decl. (Doc. 64-1) ¶¶ 38-52.)  Plaintiff's affidavit states that "[he] later learned the web site content where [he] made the purchase was not published website content and the

- 15 -

offer on the published website had a price of $15.95 while the price on the unpublished website had a price of $9.95." (Pl.'s Resp. Br., Hill Decl. (Doc. 64-1) ¶¶ 40, 43.) Plaintiff has failed to present any admissible evidence, or forecast any ability to introduce admissible evidence, of the "unpublished" website or that it was in fact Defendant's website. Although Plaintiff claims to have a video and filed screen shots (Pl.'s Resp. Br., Attach. 3 (Doc. 64-4)), Plaintiff has presented no facts that would support introduction at trial of the contents of any such unpublished website. Accordingly, these allegations will not be considered.

Plaintiff's next disputed matter relates to Bank of America ("BOA") Card Services. Plaintiff alleges that in November 2010 he submitted a dispute to Defendant to remove information "on Bank of America credit card accounts listed in his credit file that belonged to his wife." (Am. Compl. (Doc. 12-2) ¶ 69.) Plaintiff contends that he was told by Bank of America that they did not report the cards to Equifax, but Plaintiff provides no basis for this fact. In disputing the cards, Plaintiff stated to Defendant "that he was an authorized user on the cards, but that his ex-wife was responsible." (Def.'s Br., Cole Decl. (Doc. 56-2) ¶ 57.) Defendant conducted a reinvestigation as to one of the cards and verified the

- 16 -

account as accurate. (Id.) Defendant deleted one of the accounts because it reported as lost or stolen. (Id.) Defendant reported the results of the reinvestigation to Plaintiff. (Id.)

The next subject of dispute raised by Plaintiff relates to a Discover card that did not belong to Plaintiff. Plaintiff alleges that he filed an online dispute regarding the Discover account on October 15, 2011. (Supplemental Compl. (Doc. 44) ¶ 24.) In response to the dispute, Defendant contacted Discover through the ACDV process and Discover verified the account as accurate. (Def.'s Br., Cole Decl. (Doc. 56-2) ¶ 65.) The Discover account was not removed from his report, so Plaintiff contacted Discover directly, which agreed to remove the account from his credit file. (Supplemental Compl. (Doc. 44) ¶¶ 39-40.)

The next factual dispute relates to a Santander account. Plaintiff alleges that on August 10, 2011, he filed a dispute via Equifax's online system related to his Santander account and the BOA account. (Id. ¶¶ 6-10.) In response to the dispute, Defendant contacted Santander through the ACDV process and Santander updated the account balance to zero. (Def.'s Br., Cole Decl. (Doc. 56-2) ¶ 65.) Following the dispute, the Santander account was modified to reflect that he did not owe a

- 17 -

balance on the auto loan as previously indicated. (<u>Id.</u> ¶¶ 34-35.)

Plaintiff also challenges a Dell Financial Services account which was not reported.  Plaintiff states that the account was closed in good standing and should have remained on the report until 2017.  (Am. Compl. (Doc. 44) ¶ 41.)  Defendant has provided no evidence in response to this allegation; this court will assume Plaintiff's allegations are true and the account should not have been deleted.

## III. LEGAL STANDARD

When reviewing a pro se complaint, federal courts should examine carefully the plaintiff's factual allegations, and not summarily dismiss the complaint "unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1151 (4th Cir. 1978) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)); see also <u>Boag v. MacDougall</u>, 454 U.S. 364, 365 (1982) (noting that federal courts should construe a pro se petitioner's pleading liberally, no matter how inartful).

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c).  Such motions are "designed to dispose of cases when the

- 18 -

material facts are not in dispute and the court can judge the case on its merits by considering the pleadings." Preston v. Leake, 629 F. Supp. 2d 517, 521 (E.D.N.C. 2009). "[T]he applicable test under Rule 12(c) is whether, 'when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law.'" Blue Rhino Global Sourcing, Inc. v. Well Traveled Imports, Inc., 888 F. Supp. 2d 718, 721 (M.D.N.C. 2012) (quoting Smith v. McDonald, 562 F. Supp. 829, 842 (M.D.N.C. 1983), aff'd, 737 F.2d 427 (4th Cir. 1984), aff'd, 472 U.S. 479 (1985)).

When a district court relies upon evidence outside the pleadings, Federal Rule of Civil Procedure 12(d) serves to convert a motion for judgment on the pleadings into a motion for summary judgment. Fed. R. Civ. P. 12(d). "[I]t is well-settled that it is within the district court's discretion whether to accept extra-pleading matter on a motion for judgment on the pleadings and treat it as one for summary judgment or to reject it and maintain the character of the motion as one under Rule 12(c)." McBurney v. Cuccinelli, 616 F.3d 393, 410 (4th Cir. 2010) (internal quotation and citation omitted); see also Bellotte v. Edwards, 388 F. App'x 334, 337 (4th Cir. 2010) (noting that "[s]uch an approach serves judicial economy because

- 19 -

it 'spar[es] the district court an unnecessary remand'" when it is clear that a 12(c) motion has been converted to a motion for summary judgment (quoting Bosiger v. U.S. Airways, 510 F.3d 442, 450 (4th Cir. 2007)). "In practice, the great majority of Rule 12(c) motions eventually are converted into motions for summary judgment. This is because it usually is necessary to introduce supporting affidavits and other written documents to prove that no triable issue of fact actually is in dispute." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1371 (3d ed. 2004).

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that no genuine issue of material fact exists, thus entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The moving party bears the burden of initially demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If the moving party has met that burden, then the nonmoving party must persuade the court that a genuine issue remains for trial.

> When the moving party has carried its burden under
> Rule 56(c), its opponent must do more than simply show
> that there is some metaphysical doubt as to the
> material facts. In the language of the Rule, the

> nonmoving party must come forward with specific facts
> showing that there is a genuine issue for trial.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (citations and footnote omitted) (quoting Fed. R. Civ. P. 56(e)).  In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  The court must view the facts in the light most favorable to the nonmovant, drawing inferences favorable to that party if such inferences are reasonable.  Id. at 255.  However, there must be more than a factual dispute; the fact in question must be material, and the dispute must be genuine.  Fed. R. Civ. P. 56(c); Anderson, 477 U.S. at 248.  A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

**IV.  ANALYSIS**

At this stage in the proceeding, both the Motion for Partial Judgment on the Pleadings and Motion for Summary Judgment are ripe for disposition.  This court exercises its discretion to convert the Motion for Partial Judgment on the Pleadings into a Motion for Summary Judgment and, as such, will

consider all of the evidence thus far submitted by both parties
in making a determination regarding summary judgment.

**Plaintiff's FCRA Claims**

Under the FCRA, consumer reporting agencies are charged
with "adopt[ing] reasonable procedures for meeting the needs of
commerce for consumer credit, personnel, insurance, and other
information in a manner which is fair and equitable to the
consumer, with regard to the confidentiality, accuracy,
relevancy, and proper utilization of such information."  15
U.S.C. § 1681(b).  The FCRA imposes civil liability on "any
consumer reporting agency or user" which is negligent, 15 U.S.C.
§ 1681o, or willful, 15 U.S.C. § 1681n, in failing to comply
with the FCRA's requirements.

Plaintiff has clearly and unequivocally asserted all of his
FCRA claims pursuant to 15 U.S.C. § 1681n.  In both his amended
complaint and supplemental complaint, Plaintiff specifically
asserted each of his claims under the FCRA as a willful
violation under 15 U.S.C. § 1681n.  Additionally, in response to
Defendant's motion for summary judgment, Plaintiff reiterated
his intention to raise all of his FCRA claims as claims under
1681n.  (See Pl.'s Resp. Br. (Doc. 64) at 2 ("It is Plaintiff's
contention that Defendant violated the FCRA willfully or in
reckless disregard of his rights . . .") and 29 ("The problem

- 22 -

with Defendant's argument is they [sic] are really eluding [sic] to claims under 1681o whilst Plaintiff relies on 1681n. . . . Under 1681n, a Plaintiff must prove a willful or reckless violation of the act to recover statutory and even punitive damages.").)  Finally, at oral argument on these motions held July 30, 2013, this court confirmed with Plaintiff that he had knowingly and intentionally elected to bring his FCRA claims under 1681n only.[10]

15 U.S.C. § 1681n provides:

(a) In general.

Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of --

> (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $ 100 and not more than $1000;

> . . . .

> (2) such amount of punitive damages as the court may allow; and

> (3) in the case of any successful action to enforce any liability under this section, the

---

[10] Plaintiff's pleadings, and research, reflect substantial knowledge of the provisions of the FCRA and related cases. Regardless of the merits or reasons for Plaintiff's decision, this court is satisfied that Plaintiff has knowingly and intentionally chosen not to proceed under 1681o and instead brought his claims only under 1681n.  Plaintiff's decision is not without precedent.  See Fuges v. Sw. Fin. Servs., Ltd. 707 F.3d 241, 249 n.12 (3d Cir. 2012).

> costs of the action together with reasonable
> attorney's fees as determined by the court.

The FCRA does not impose strict liability on consumer reporting agencies for inaccuracies in reporting. Instead, the FCRA allows for enhanced penalties for willful violations. See 15 U.S.C. § 1681n; Dalton v. Capital Associated Indus., Inc., 257 F.3d 409, 417 (4th Cir. 2001). When the claim is one alleging a willful violation of the FCRA (15 U.S.C. § 1681n), "[p]laintiffs must 'show that the defendant knowingly and intentionally committed an act in conscious disregard for the rights of the consumer.'" Ausherman v. Bank of Am. Corp., 352 F.3d 896, 900 (4th Cir. 2003) (quoting Dalton v. Capital Associated Indus., Inc., 257 F.3d 409, 418 (4th Cir. 2001)). Willfulness under 15 U.S.C. § 1681n includes a reckless disregard of the plaintiff's rights. Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 69 (2007) ("[A] company subject to the FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."). "The Supreme Court's decision in Safeco defined the standard for all willful

- 24 -

violations of the FCRA." Cortez v. Trans Union, LLC, 617 F.3d 688, 721 n.39 (3rd Cir. 2010).

In Saunders v. Branch Banking & Trust Co., 526 F.3d 142 (4th Cir. 2008), the Fourth Circuit upheld a finding of a willful violation under 1681n. The Saunders case was tried in accordance with the standard set forth in Dalton and prior to the Safeco decision. Id. at 151 n.4. The court found that the plaintiff's evidence of a willful violation of the FCRA was sufficient where there was evidence that

> (1) BB&T's records reflected the ongoing dispute over the debt, (2) BB&T's reports to the CRAs did not reflect that ongoing dispute, and (3) BB&T intended not to report that ongoing dispute. Saunders offered the admission of BB&T officer Holben that BB&T intended to report Saunders' loan without mentioning Saunders' communications or the ongoing dispute reflected throughout BB&T's records. Moreover, evidence at trial revealed that BB&T had never updated the report to reflect the dispute.

Id. at 151.

In Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235 (4th Cir. 2009), a jury found "that Equifax had violated the FCRA in numerous respects and awarded Robinson $200,000 in actual damages." Id. at 237. Notwithstanding the numerous violations, the trial court granted Equifax's motion for judgment as a matter of law and dismissed a punitive damages claim. On cross

appeal, the plaintiff challenged that ruling. The Fourth Circuit stated:

> To be sure, the FCRA allows a plaintiff to recover punitive damages for willful violations. See 15 U.S.C. § 1681n, 1681o (West 1998 & Supp. 2008); Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 127 S. Ct. 2201, 2206, 167 L.Ed.2d 1045 (2007) (recognizing that "[i]f [a violation of the FCRA is] willful, however, the consumer may have actual damages, or statutory damages ranging from $100 to $1,000, and even punitive damages."). In this case, however, evidence that Equifax acted willfully is wholly lacking. Accordingly, Robinson's argument is without merit.

Id. at 241 n. 3.

The facts in Robinson are similar to this case in that Plaintiff has presented evidence of numerous mistakes by Defendant, at least as to the Port Barre address. However, similar to Robinson but unlike Saunders, Plaintiff has failed to present any evidence of willful conduct as required by 1681n. Plaintiff's speculation is not sufficient to rebut sworn testimony directed at the actual procedures employed in the interactions between Plaintiff and Equifax.

The Tenth Circuit recently held:

> As in Birmingham [v. Experian Info. Solutions, Inc., 633 F.3d 1006, 1009 (10th Cir. 2011)], in which we held the defendant was entitled to summary judgment on the plaintiff's willful violation claim, "we have been pointed to no described practice that would be a reckless violation of the FCRA." Nor has Plaintiff provided any evidence the Ocwen Defendants' standard procedures were unreasonable. At most, he offers evidence that the Ocwen Defendants negligently

- 26 -

> violated their § 1681s-2 obligations. This is
> insufficient to support a claim under § 1681n for a
> willful violation of the FCRA.

Llewellyn v. Allstate Home Loans, Inc., 711 F.3d 1173, 1185

(10th Cir. 2013) (quoting Birmingham, 633 F.3d at 1012).

Similarly, here, Plaintiff may be able to show Defendant

negligently violated its FCRA obligations, particularly as to

its failure to correct Plaintiff's address. However, Plaintiff

has not shown a described practice that would be reckless, nor

has Plaintiff provided any evidence that Defendant's procedures

were unreasonable. This evidence is insufficient to sustain a

§ 1681n claim of a willful violation of the FCRA.

**Plaintiff's State Law Claims**

In addition to his claims under the FCRA, Plaintiff sets

forth claims under North Carolina state law, namely fraud,

intentional infliction of emotional distress, and North Carolina

Unfair and Deceptive Trade Practices Act claims. Defendant

contends that each state law claim is preempted under 15 U.S.C.

§ 1681h(e) (Doc. 56 at 26) and, in any event, that Plaintiff

fails to allege facts sufficient to survive summary judgment

(Id. at 27-28).

Title 15, United States Code, Section 1681h(e) states in

pertinent part "[e]xcept as provided in sections 1681n and 1681o

of this title, no consumer may bring any action or proceeding in

- 27 -

the nature of defamation, invasion of privacy, or negligence
. . . except as to false information furnished with malice or
willful intent to injure such consumer."

It is noteworthy that none of Plaintiff's claims in the
instant case are those causes of action specifically listed in
§ 1681h(e).  Some courts have held that § 1681h(e) does not bar
state law claims other than those enumerated in the language of
the statute, and thus some other state actions can proceed
alongside FCRA claims.  See, e.g., Adams v. Nat'l Eng'g Serv.
Corp., 620 F. Supp. 2d 319 (D. Conn. 2009); Davis v. Md. Bank,
No. 00-04191, 2002 WL 32713429 (N.D. Cal. 2002) (finding
intentional infliction of emotional distress claim not preempted
by § 1681h(e)).

The Fourth Circuit, however, has recognized that "[t]he
only exception to [1681h(e)'s general bar on defamation,
invasion of privacy, and negligence actions] is a narrow one,
requiring proof of 'malice or willful intent to injure [the]
consumer.'"  Ross v. F.D.I.C., 625 F.3d 808, 814 (4th Cir.
2010), cert. denied, ____ U.S. ____, 131 S. Ct. 2991 (2011)
(quoting § 1681h(e)).  To determine whether a state law claim is
preempted by the FCRA, a court must first ask if the state law
claim falls within the scope of § 1681h(e): only those claims
"'based on information disclosed pursuant to section 1681g,

- 28 -

1681h, or 1681m . . ., or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report.'" Id. Next, a court must determine "whether the 'malice or willful intent to injure' exception to the general bar against state law actions applies." Id.

This court assumes arguendo that Plaintiff's state law claims do fall within the scope of § 1681h(e) in that they are "based on information disclosed pursuant to . . . § 1681g." The allegedly erroneous information contained in Plaintiff's credit report was reported to him, a consumer, under § 1681g. Accordingly, this court must move on to the second step of the analysis: resolving the question of whether any actions by Defendant, which may be in violation of state law, were undertaken with the requisite "malice or willful intent to injure."

The FCRA does not define "malice." The Fourth Circuit likewise has not defined "malice" as a matter of law, reasoning in Ross that the definition may follow the federal law standard announced in New York Times Co. v. Sullivan, 376 U.S. 254 (1964), as a statement made "with knowledge that it was false or with reckless disregard of whether it was false or not." Id. at 280. Alternatively, the Fourth Circuit has advised that the

- 29 -

state law definition may apply, Ross, 625 F.3d at 815, and the Fourth Circuit has in fact applied state law in prior cases. See Beattie v. Nations Credit Fin. Servs. Corp., 69 F. App'x 585, 590-91 (4th Cir. 2003) (looking to South Carolina law for the definition of "malice").  Under North Carolina law, actual malice is defined as a borrowed construct from common law defamation as "'ill-will or personal hostility on the part of the declarant . . . or by showing that the declarant published the defamatory statement with knowledge that it was false, with reckless disregard for the truth or with a high degree of awareness of its probable falsity.'"  Joiner v. Revco Discount Drug Ctrs., Inc., 467 F. Supp. 2d 508, 514 (W.D.N.C. 2006) (quoting Barker v. Kimberly-Clark Corp., 136 N.C. App. 455, 461, 524 S.E.2d 821, 821 (2000)).  "[W]here the factual dispute concerns actual malice . . . the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not."  Anderson v. Liberty Lobby, 477 U.S. 242, 255-56 (1986).

The Fourth Circuit has made clear that there is a general bar against state law claims proceeding in concert with FCRA claims.  As a result, to sustain his state law claims,

Plaintiff's allegations must fall within the exception carved
out for those claims involving "malice or willful intent to
injure."  This court need not resolve at this time the question
of whether the federal or state law definition of malice is
applicable to Plaintiff's claim.  As with his FCRA claims,
Plaintiff's allegations of malice on his state law claims are
conclusory and are based on his speculation rather than review
of any of Defendant's policies or actions.  Plaintiff would have
this court infer malice on the part of Defendant where alleged
errors went uncorrected or reappeared erroneously.  However, the
record is silent on any evidence to support an inference of
"ill-will or personal hostility" by Defendant towards Plaintiff,
or "reckless disregard for the truth."  Despite the discovery
period afforded him, Plaintiff has no evidence with which to
rebut the sworn testimony submitted by Defendant.  (Def.'s Br.,
Cole Decl. (Doc. 56-2) ¶ 76 ("Equifax never acted to
intentionally harm Plaintiff or his credit file.").)  As a
result, Plaintiff has not created a genuine issue of material
fact sufficient to survive summary judgment on his state law
claims.

## IV.  CONCLUSION

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 34) and Motion for Summary Judgment (Doc. 55) are hereby **GRANTED** and this action is dismissed.  A Judgment dismissing this action will be entered contemporaneously with this Memorandum Opinion and Order.

This the 24th day of September, 2013.

_____
United States District Judge